194

(No. 283523—Decided November 22, 1972.)

Municipal Court of Franklin County.

*Mr. George W. Gross,* for plaintiff.
*Mr. Charles E. Brown,* for defendant.

WEST, J.   This action was brought by plaintiff as owner of a 3 year old thoroughbred race horse, named Pribal, against defendant, a veterinarian, charging defendant so mishandled the horse that it sustained physical injuries and emotional trauma; that the emotional stability of the horse worsened until finally it was exterminated.   Plaintiff asks a total of $6,663 including $1663 expense for care and medical attention for Pribal.

This case was previously tried in this court and judgment for the defendant was reversed by the Court of Appeals in *Southall* v. *Gabel* (1971), 28 Ohio App. 2d 295, on the grounds that an action against a veterinarian for negligence in the treatment of a horse is not an action for malpractice, and is not subject to the one year statute of limitations of R. C. 2305.11.

The court finds Pribal was claimed for plaintiff at River Downs August 11, 1967, for a price of $1500.   This thoroughbred ran 11 times in 1967, including two times

after plaintiff got him, and was in the money seven times with winnings of $2939.

The defendant has been a Doctor of Veterinary Medicine since 1954 and specializes in equine surgery which he practices at the Ohio State University Veterinary Clinic.

Plaintiff on September 11, 1967, brought Pribal to the O. S. U. Veterinary Clinic with apparent lameness. Radiographs and examination revealed: (1) chip fracture off antero-lateral aspect of distal left radius, (2) multiple areas of exostosis in left knee, (3) periostitis (splints) both right and left medial splint bones, front legs. The colt was sent home September 13, 1967, for stall rest for three weeks to a month because of heat in the knee and cortisone having been injected in the last three weeks.

Pribal was returned to the clinic October 1, 1967, and a bone chip was removed from the lateral radiocarpal joint of the left leg. According to clinic records he was ready to go home October 16, 1967, but instead of going home, on October 17, 1967, after dark, Pribal was loaded by mistake by students at the clinic in defendant's two-horse, padded, rubber-floored van with another horse destined for the Ohio Thoroughbred Center at Sunbury, Ohio. Pribal was not tranquilized nor were standing bandages or shipping boots put on his legs. The horse loaded, traveled and unloaded well on this occasion. Horses are often tranquilized and have leg protection for transportation but not always. Before 1960 horses were never tranquilized.

The defendant left the horse at Sunbury after discovering the error and when plaintiff came to see Pribal at the clinic the next day and found the horse gone, defendant promised he personally would deliver the horse to the stable in Hilliard where plaintiff wanted it.

The evening of October 19, 1967, at about 11:00 p. m., defendant, with no trouble, loaded Pribal into his van, secured the horse and gave him hay. The horse was not tranquilized, no stall sheet, no bandages and no boots were used. The horse was not shod, his shoes having been removed for surgery. After traveling about a mile, defendant stopped because he could feel the horse moving about

in the van. Defendant observed the horse was jumping up and down and moving from side to side and wouldn't calm down, so defendant gave Pribal an intravenous injection of a tranquilizer. The conduct of the horse was characterized as a "van fit."

Defendant returned Pribal to Sunbury, unloaded him, walked him, treated an abraded area on the hip, noted minor skin damage elsewhere and that Pribal was handling the operated leg well. Defendant notified plaintiff and she personally went to the stable at Sunbury at 2:30 a. m. October 20, 1967, and saw the horse was soaking wet, one hip was badly abraded, the ankles were swollen, the bandage had slipped from the operated knee down to the ankle and the incision was seeping.

Upon the insistence of plaintiff, Pribal was returned to the O. S. U. Veterinary Clinic by a company specializing in transportation of horses. Although plaintiff insisted the horse's legs be wrapped this time, they weren't. Pribal was kept at the clinic until December 13, 1967. Then it took six students to load the horse into the van and, according to plaintiff, Pribal was no longer kind, gentle and loving. Instead of wanting to nuzzle he wanted to bite.

No charge was ever made to plaintiff for the surgery or the clinical care of her horse. A horse cannot race for four to six months after surgery on its knee.

Pribal began racing again about April 1968, and ran nine times that year, but was never in the money. The horse was gelded in the fall of 1968 in an attempt to improve its disposition, but this did not help and he continued to be the most temperamental horse the trainer ever saw. The trainer didn't know if it was the starting gate, the van fit or what caused the horse to be that way. He had never been around a horse that became a killer other than Pribal. They ran Pribal seven times in 1969, but he was never up close and plaintiff had him destroyed August 24, 1969.

To prove a cause of action in tort, plaintiff must show by a preponderance of the evidence that defendant has violated a legal duty owed to plaintiff which has proximately caused plaintiff to suffer some damage.

In this case, plaintiff has complained the defendant failed to use the care required when transporting plaintiff's horse October 17 and October 19, 1967; "(1) In moving the colt in a van so soon after surgery, and (2) In not preparing the colt's legs for transit with the use of proper standing and shipping bandages."

The evidence establishes there was nothing unusual or out of the ordinary in moving Pribal October 17, 1967, as the horse was ready to go home and the results of the surgery were in no way affected. Since the horse loaded, traveled and unloaded well two days before without a tranquilizer or leg protection, defendant's action in loading and starting to transport it October 19, 1967, was not unreasonable or imprudent.

Proximate cause is the active and efficient cause that sets in motion a train of events which brings about the result without intervention of any force started and working actively from a new or different and independent source.

What caused Pribal to become mean and a "killer" is speculative. When admitted to the O. S. U. Veterinary Clinic September 11, 1967, it was noted: "This horse is highly spirited" and "Attitude: Alert—very hyper" and "Genital System: Suspect peri phimosis—always has penis extended over period of time—both testes descended." When admitted to the clinic for surgery October 1, 1967, it was noted: "Horse has been raced on cortisone injection into the knee and butazolidin treatment for lameness." On October 4, 1967, the chart shows: "Operated for carpal chip. Recovery was a bad trip (freak out)." The defendant explained this was the student veterinarian's way of indicating the horse had a violent recovery from anesthesia. A notation on the chart October 9, 1967, reads: "This horse masturbates—may be the reason for his loss of condition."

When Pribal was returned to the O. S. U. Veterinary Clinic October 20, 1967, after having had the "van fit" the previous night, the admission record showed: "Horse traveled roughly in a trailer—hip abrasion and swollen hind legs with multiple superficial abrasions." On October 28, 1967, the chart is noted: "Animal is ready to go home—

looks better than ever did. All lesions healed—legs are down." The evidence was that plaintiff refused to take Pribal home then and another notation on the chart December 10, 1967, reads in part: "this is * * * the worst tempered animal I have ever come in contact with * * *."

A horse is personal property, yet where the alleged damage to such property is injury resulting in physical or mental disability, causal connection between the injury and the disability must be established in much the same way as required where the injury is to a person. As Justice Leach so well states in *Darnell* v. *Eastman* (1970), 23 Ohio St. 2d 13: "Except as to questions of cause and effect which are so apparent as to be matters of common knowledge, the issue of causal connection between an injury and a specific subsequent physical disability involves a scientific inquiry and must be established by the opinion of medical witnesses competent to express such opinion."

In this case, the defendant was the only veterinary medical witness. The O. S. U. Veterinary Clinic records are in evidence. Dr. Gabel did not and the clinical records do not indicate any causal relationship between the handling of Pribal by the defendant and the subsequent personality change resulting in Pribal becoming a "killer horse." The closest thing to expert testimony was that of plaintiff's trainer who did not know if it was the van fit, the starting gate or what made the horse so mean.

The clinic's records indicate there are many factors which may have led to Pribal's deterioration. It could have been his breeding, the fact he was very high spirited and very hyper; the fact he had been raced with bad legs; the bad trip on anesthesia or even his sex problems.

Accordingly, at the conclusion of the plaintiff's case, plaintiff having rested, defendant's motion to dismiss per Civil Rule 41 (B) (2) is sustained and this case is dismissed at plaintiff's costs.

*Motion to dismiss sustained.*